We are now going to move to appeal 22-3282 United States v. David Perez and Ms. Singer will recognize you first for argument on behalf of the appellant. Thank you, your honors. Good morning. May it please the court, counsel, my name is Dina Singer and I'm counsel for appellate David Perez. Mr. Perez's criminal case is before this court following a probation revocation hearing, supervised release hearing, where the district court questioned the probation officer about the alleged supervised release violations, and then denied Mr. Perez the opportunity to cross-examine the probation officer on the same issues. What would he have asked? I'm sorry, I did not hear your question. What would he have asked? What are the questions for the probation officer? What I would have asked, I was the counsel at that time. I know, but what would you have asked? Judge Seeger, maybe he could have allowed cross-examination, but he said twice, what do you want to ask? And your client's attorney said nothing. Well, my client's attorney indicated that after asking twice to cross-examine the probation officer. But what would she have asked? The probation officer is not a percipient witness. The probation officer, all she said was, Judge, I've watched the video. She's just testing, she's just saying, and this is what's happening. And now it's snowing outside. And now he crossed the street. I mean, whatever it is, what difference does it make? It does make a difference, Your Honor. And what counsel would have asked is, Ms. Probation Officer, you indicated that you have training and experience regarding the identification of firearms. What is your training and experience? Ms. Probation Officer, when is the last time you handled a firearm? Ms. Probation Officer, when is the last time that you examined a firearm for a serial number? Ms. Probation Officer. But why didn't she or he, I don't know who the counsel was below, ask those questions? Why didn't they tell the judge, here are the questions I have to ask? And the judge could have asked the questions. The judge could have allowed, I think the government even said, Judge, allow a little cross-examination. The judge said no. He could have done it. But he could have asked those questions as well. Could have. However, a judge, as Your Honors are aware, is not the gatekeeper of cross-examination. Well, he's the gatekeeper of relevance. You know, if his counsel, Mr. Perez's counsel, said, ask when the Probation Officer last handled a gun. No, it's irrelevant. What's your next question? He could have done that. The court could have done that. And there would be good reason for doing that in this proceeding. I respectfully, Your Honor, I disagree that there's good reason for doing that in this proceeding. However, before we can even get to that step, Your Honors, the fact is, is that the district court didn't even do a balancing test to determine if cross-examination was appropriate. Well, it did do the balancing test, the Jordan test, on the police report. It just didn't do it on the video. Correct, Your Honor. Only as to the police point. What I mean, Your Honor, by the fact that the judge is not the gatekeeper of cross-examination, even in a supervised release violation, and the defendant, whose liberty is at stake, and who's the Probation Officer in her report indicated that she is asking for detention, she is asking for revocation, she is asking for time in custody. What I mean by saying that the court is not the gatekeeper of cross-examination is that cross-examination is to flesh out in part bias, motive, interest. This is an individual that has a probation officer that has quite a bias, motive, and interest because they themselves have asked for Mr. Perez to be revoked and to go into custody. What I mean by the gatekeeper, of course, the court and His Honor is the gatekeeper of relevance. He makes decisions on the bench. However, an individual's cross-examination has never been through another person. If I have questions. I'm with you in front of a jury, but I'm not necessarily with you where the judge is the decision maker. I think the bigger issue here, to me at least, is not the issue of whether Judge Seeger should have allowed some cross-examination, but what happens when he says to your client's nothing. He says, look, I'm just not going to allow this free-for-all here when there's no jury. I'm the decider. I can decide what topics you want to ask the probation officer about that are relevant to my decision. Then we'd be hearing a different question, I think. The Judge Seeger should have asked those questions or should have allowed those questions, but we're not because your client's lawyer said nothing. I have nothing to ask, essentially. Excuse me for interrupting you. No, it's okay. And respectfully, the issue is in part, or not even in part, I would say in whole, is we do try and respect as much as we can the court. And once the judge indicated the first time that he would not allow cross-examination, and then a second time counsel asked for cross-examination and he denied that again. There is a period at that point where, as counsel, you have to make a decision to say, okay, I'm going to move forward for the best interest of my client, whose freedom they are trying to revoke, whose freedom they are trying to take away, and absolutely respect the court's decision to not allow questioning. If counsel, even at, let's say, your Honor brought up at trial, if counsel at a bench trial, now I know the standard's different. I know this is a supervised release violation. But if counsel at a bench trial has to ask all cross-examination questions, or any cross-examinations, through the judge. Yeah, I'm with you, but I'm thinking of it more of an offer of proof. You know, where a judge says, look, counsel, I'm not going to let you get into that topic area. And the counsel says, judge, let me make an offer of proof. If you would, this is what the witness would say, or this is what we believe the witness would say. Then we have something to review. The judge didn't use the words offer of proof. He didn't ask for an offer of proof. In fact, what he did was say no to counsel twice regarding cross-examination questions. And he did in part rely on the comments, witnesses' statements, in making the decision to revoke Mr. Perez's supervised release. What's the basis for saying that? I'm sorry, I didn't hear you. What is the basis for saying the judge relied upon what the probation officer told him? Yes, Your Honor. In the transcript, Your Honor, from the revocation hearing, the judge specifically indicated in regards to the identification of Mr. Perez that he had established on his own that it was Mr. Perez in the video. However, he used the probation officer's statements to corroborate. Where do we have that? It's the language that he used. Where do we have that? Judge, if I can have one moment. Sure. Please. I can get you that. It's critical. Yes, Your Honor. I don't have the page number, but I think he said that the probation officer, and I quote, was well familiar with the defendant. She identified the defendant in the person in the videos and then said that the identification corroborated the court's impression. I don't know if that helps you find the page. I don't have the page number. That's correct. Sorry, I don't know about the mic. That's correct, Your Honor. The government's brief even mentions that. Thank you. It's on page 71, Your Honor, of the transcript. What about the firearm issue? In what regards? Did the judge rely upon the probation officer's testimony that it was a firearm? Well, that's an interesting question. The judge did not specifically say he did not, but he did not specifically address it. It is accurate that from the transcript, that page 71 that was just referenced, that the judge did rely on the probation officer's statements for the indication that it was Mr. Perez. The judge was silent on that issue, and so we don't have an answer, and so this court doesn't have an answer to that either. And when we are looking to revoke and take away someone's freedom and place them into custody, an answer is needed. The proper procedure is needed. Well, there was, because he said what he relied upon, and he just didn't mention the probation officer's testimony, because he does say, look, I watched the video. Looks like a gun to me. And I think the argument was not so much it wasn't a gun, but if it was a fake gun, or it could have been. At least, I didn't think Mr. Perez's lawyer was arguing it's not a gun. I think what he's arguing is it's not a real gun. Correct, Your Honor. And then Judge Seeger said, look, this is what you do with a real gun, not a toy gun. And so he found by preponderance the evidence, and then the question for us is, is that finding clear error? That's correct, as to the gun issue. That's correct. However, a judge's silence, we have to then interpret. This court then has to interpret. Well, that's not really right, because otherwise the judge would have to say everything that the judge relied upon and everything that the judge disregarded. She said, I relied on this. I didn't rely on this. We do require judges to do that. We do require judges to say what they rely on. We do require judges to make an entire and complete record. If we think about a sentencing hearing, judges are required by Congress to indicate exactly what they relied on in sentencing somebody. They are required to ask, have I addressed everything in mitigation? I see my time is up, Your Honor. You may finish up. And therefore, it is not that we shouldn't – we do require that. I would like to reserve the rest of my time for rebuttal. All right. You have used that time. We'll give you a brief amount of time for rebuttal. Thank you, Your Honor. Thank you. We'll now move to argument on behalf of the appellee by Ms. Morgan. Good morning, and may it please the court. My name is Alex Morgan, and I represent the United States. The procedures at issue here in the defendant's supervised release hearing complied with Rule 32.1 and the Constitution. The probation officer, a neutral arm of the court, did not need to be subject to cross-examination. Defendant's confrontation rights in this context are limited, and they're limited to confronting adverse witnesses. And there's just simply no meaningful sense in which the probation officer here functioned as an adverse witness. She's the complaining witness. She initiates the whole proceeding, right? That's correct, Your Honor. She's the one who recommends to the court you need to revoke. That's correct. That's the probation officer's role as supervising the defendant at the court's direction. And the probation officer is required to file violation reports with the court, as she did here. It's the government's burden, however, to prove up those alleged violations. And you do that with whom? Typically the probation officer, right? I think it would depend on the context, but in this particular case, the government did not rely on the probation officer in any way. The probation officer... Right. You didn't. The question is, did the judge? I think if you look at the transcript as a whole, it's clear that the judge did not rely upon probation officer's statements in reaching its factual determinations. Okay. He says it corroborated his own views. That's true. So there's two factual issues here. As to the identification issue of the defendant, which is less contested, and I think the record bears that out. But as to the identification of the defendant, it's correct that the judge notes this corroborated my view. Suppose the judge had said, I am relying on the probation, just had skipped his own view and just said, the probation officer knows this guy well. She watched the videos. She says that's him. I think that's him. What if that's the record? I think that would be a closer call, certainly. Definitely. Why wouldn't cross-examination be required under that situation? I still think we have to look at the fact that the government did not call this individual. So the probation officer filed her violation report, and the report itself states there's video footage of the defendant with a gun. The government then bears the burden to prove that up, and the government does so with video evidence that's wholly independent of anything that the probation officer says at that hearing. So you seem to not want to answer the hypothetical, which is the judge says I'm relying on what I heard from the probation officer after having prohibited cross-examination. You can say yes. That would be a problem. Yes. I think in that case, that would be problematic in terms of not allowing the cross-examination. It sure would. And the problem that I have in this case is, I've never, frankly, seen this procedure on such critical points before. And I am very troubled by the idea that we might bless this procedure subject to a Talmudic parsing of the judge's explanation to decide just how much he or she relied upon statements by the probation officer or somebody else who was not allowed to be cross-examined. Understood, Your Honor. And this is perhaps a bit atypical procedural-wise. But I think that does not mean that a violation of supervised release would not have been found absent taking into account the probation officer's testimony. So you want to argue harmless error here. I think that if there was any error of defendant's limited confrontation rights, yes, it is certainly harmless. Isn't the better argument here? Because that would be a problematic case if the judge relied... The not an adverse witness argument is very tough, okay? She's testifying, the probation officer's testifying to things that are very adverse to the defendant's interest. She's identifying him in the video. That's damning testimony in this case. But the judge has the ability to control the proceedings and the manner in which the proceedings are done. And when defendant says cross-examination and the judge says, on what? And the defendant says, ah, forget it. Isn't the judge within his right at that point to say, no, I'm not just going to let you come up here and have this free-for-all? There's no jury. I want to know on what subject you're going to cross-examine. And when the defendant's counsel says, essentially, I don't even have... I'm not going to tell you, that's it. There's no constitutional problem at that point. The judge effectively allowed cross-examination. Yes, and I think the judge also, as I think Your Honor may have pointed out, twice offered defense counsel that opportunity to provide it with questions. And at one point, defense counsel says, I can argue the point without even making...  Because she's just arguing it's not him. We all watched the video. It's not him, and it's not a real gun. That's correct. And the defense counsel does make a somewhat lengthy argument saying, this officer had no... You know, she wasn't there. She didn't recover a gun. She didn't hold a gun. She didn't see this in person. And so the court, as the fact-finder, is able to take all of that into account when making its factual findings. So if the narration had morphed to characterization and defense counsel spoke up and said, nope, it wasn't the right hand, it was the left hand that this object was in, that's opening a door for possibility of questioning. Even then, though, it seems like we're backing up. The idea was this video is being shown in a courtroom and there's a court reporter there and the district judge is saying, well, we've got to describe what's going on. And that's the genesis of where this came from. Is that correct? That's correct. And that's why I think it's important to look at the record as a whole because the court says multiple times, I need a warm body to tell me what's going on on the screen. I want to make a public record. I'm not sure why, by the way. We could watch the record. We could watch the video. Fair enough, Your Honor. I don't think that was necessary. But that was the court's preference to get that on the record in that manner. And it shows... I'm a little troubled by the adverse witness testimony. You know, when I was an assistant U.S. attorney, one of the first things I would do is put the witness on the stand and say, can you identify the defendant? Yes, where is he? He's right over there wearing the suit with the black tie. And I think that's actually pretty good testimony for me. And that makes the witness an adverse witness. And I would think the same of the probation officer. Is that the defendant in the video? Yes. That's good testimony for the government. The government certainly could have done that. The government instead presented pretty voluminous video evidence that you could see the defendant. Yeah, but what the government did and didn't do I don't think makes any difference. It's the defendant's interest that the court needs to protect. And whether it's the judge that's asking the question of the probation officer or the prosecutor asking the question, I don't think it makes any difference. The judge could say to the probation officer, I have certain questions for you that the government doesn't ask. Let me ask you about history and characteristics of the defendant, whatever. The government would think, oh, I wish he wasn't getting into these things. But he is. At that point, I would think the judge would have to allow cross-examination of the defendant, even if the government said we don't want cross-examination. In other words, the judge can make the witness an adverse witness as well as the government. It doesn't have to be just the government. I think that's right. But the government does bear the burden here. And I don't think that the probation officer, by submitting a violation report with allegations saying defendant had a gun, automatically becomes an adverse witness. So the question is then, what happened in the proceeding? At what point are we willing to say that made the probation officer into an adverse witness? I think once she answered the question, it's him. Maybe once the question was asked, it made her an adverse witness. I worked very closely with many terrific probation officers, relied on their advice about sentencing, and never thought that sentencing advice had to be subject to cross-examination or even necessarily disclosed to the defense or the prosecution. But when you get into a revocation hearing, things seem to me quite different. And I guess I'm not seeing any reason to discourage use of a bright line. If you're providing information in a revocation hearing to be used to revoke liberty, put them on the stand, subject to cross-examination. That rule, Your Honor, though, I think would make the probation officer into an adverse witness at every single revocation hearing. What's wrong with that? Yeah, so what? And I think that that would be fine. I mean, the probation officer here is viewed, I think, under this court's jurisprudence as a neutral information gatherer. Well, in some situations, that's correct, particularly with respect to sentencing. But when you get into revoking the supervision that is being provided by the probation officer, it's pretty stark. Same with bond hearings. In a bond hearing, the probation officer may testify to things that the probation officer has learned during his or her investigation that would make her an adverse witness, and they certainly become a compelling witness for the government at that point. In other words, I just think this opinion could be much narrower than what the government is advocating for here. Yes, and I think that what the government also recognizes in the alternative is that counsel, any type of error was harmless here because counsel was given the opportunity to provide questions to the judge and was able to make the arguments about any shortcomings in the probation officer's testimony or statements, however you want to view it, in her argument to the judge. If there are no further questions, the government would request that this court affirm the revocation of defendants' supervised release. Thank you, Ms. Morgan. We'll now move Ms. Singer to you for two minutes of rebuttal. You're welcome. Thank you. Just very briefly, I just would like to address two issues that were raised during the colloquy with counsel. Your Honor raised whether or not the judge basically effectively allowed cross-examination, and respectfully, he did not effectively allow cross-examination by saying, ask me what you want to ask and I'll determine, in essence, if that question is asked. I do respectfully ask Go ahead, go ahead. No, you go ahead. I do respectfully understand Your Honor's inquiry and point. However, cross-examination, had I had counsel ask a question and if the judge said, you can't get into that area, that's the way that cross-examination happens all the time. I'm with you if there's a jury. My concern is, what happens in the district court is a unique thing, right? Because on appeal, we're looking at a different thing. In the district court, right after the judge finds a finding that that's a defendant, the judge has to decide how much time is he going to do in jail. And he serves to the same lawyer that just asked those questions on cross-examination and says, what's your recommendation? So, I think it damages the lawyer's credibility as a practical matter. If the lawyer says, judge, I'm going to get up and cross-examine the probation officer on the identity of the defendant. Oh my gosh, everybody knows it's the defendant. And makes the argument it's not the defendant. And the judge then finds it is the defendant. Now, how much time should I give him? So, in other words, there's a strategy decision there in what questions you're going to ask. And it may very well have been that Mr. Perez's lawyer made a decision as a strategy matter, I'm not going to ask these questions. You're not wrong, Your Honor. There's a trial strategy every time we appear before the court. But it is not uncommon for a defense lawyer to zealously advocate for their client during a trial or during a revocation hearing and then have to zealously advocate for that same client at sentencing. Yeah, I'm with you. And I just think both sides here are asking for a broad opinion that pronounces these, you know, you always have the right to cross-examination or you never have the right to cross-examination. I'm just wondering if that's necessary in this case. That's all. I wouldn't go with always. We normally don't use language like always. I know. For good reason. Never say never. Never say never. Judge St. Eve one time when I was a lawyer taught me don't say there's never a case in the history of the United States because I might be able to find one. We never say never. So I start using always. Right. Thank you, Your Honor. Thank you, Ms. Singer. Thank you, Ms. Morgan. The case will be taken under advisement. That completes our hearings for the day so we'll be in recess. Thank you.